IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DANIEL BRADSHAW, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner, )<br>Social Security Administration, )<br>)<br>Defendant. )<br>_____) | Civil Action No. 1:16-cv-0969 (LO/JFA) |

## REPORT AND RECOMMENDATION

This matter is before the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (Docket nos. 9, 14). Pursuant to 28 U.S.C. § 405(g), plaintiff seeks judicial review of the final decision of Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"),[1] denying plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. The Commissioner's final decision is based on a finding by the Administrative Law Judge ("ALJ") and Appeals Council for the Office of Disability Adjudication and Review ("Appeals Council") that plaintiff was not disabled as defined by the Social Security Act and applicable regulations.[2]

---

[1] Nancy A. Berryhill has replaced Carolyn W. Colvin as Acting Commissioner of the Social Security Administration.

[2] The Administrative Record ("AR") in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). (Docket no. 7). In accordance with these rules, this opinion excludes any personal identifiers such as plaintiff's social security number and date of birth (except for the year of birth), and the discussion of plaintiff's medical information is limited to the extent necessary to analyze the case.

On November 28, 2016, plaintiff filed a motion for summary judgment (Docket no. 9) and a memorandum in support (Docket no. 10). Thereafter, the Commissioner submitted a cross-motion for summary judgment (Docket no. 14), and a memorandum in support (Docket no. 15). Plaintiff submitted his reply brief on January 12, 2017. (Docket no. 18). The Commissioner submitted her reply brief on January 24, 2017. (Docket no. 20). For the reasons set forth below, the undersigned recommends that plaintiff's motion for summary judgment (Docket no. 9) be denied; the Commissioner's motion for summary judgment (Docket no. 14) be granted; and the Commissioner's final decision be affirmed.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on June 17, 2009, with an alleged onset date of December 31, 2008. (AR 283–84). The Social Security Administration denied plaintiff's claim initially (AR 189) and on reconsideration (AR 196). After these notices of denial, plaintiff requested a hearing before an ALJ, and a hearing was scheduled for July 26, 2011. (AR 219).

On July 26, 2011, ALJ Thomas Ray held a hearing in Washington, D.C., and plaintiff appeared with his representative, Andrew Mathis. (AR 97). On November 23, 2011, the ALJ issued a decision denying plaintiff's claim for disability under the Social Security Act. (AR 172–81). In reaching this decision, the ALJ concluded that plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (AR 181). On January 19, 2012, plaintiff filed a request for review with the Appeals Council. (AR 247). The Appeals Council granted plaintiff's request for review under the substantial evidence provision of the Social Security Administration Regulations. (AR 187). On April 26, 2013, the Appeals Council entered an order vacating the ALJ's decision and remanding the case for further proceedings. (*Id.*).

Plaintiff and Andrew Mathis attended the second hearing before ALJ Ray in Washington, D.C. on December 19, 2013. (AR 40). On February 12, 2014, the ALJ issued another decision denying plaintiff's claim for disability, again concluding that plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (AR 19–34). Plaintiff filed requests for the Appeals Council to review and reopen the ALJ's decision, which were denied on April 16, 2015 (AR 12–14) and August 19, 2015 (AR 8–9), respectively. As a result, the decision rendered by the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981.

On March 16, 2016, plaintiff's wife sent a letter to the Office of Disability Adjudicator and Review stating plaintiff had not received the denial letter from the Appeals Council and requesting an extension of time to file an appeal in District Court. (AR 2). The Social Security Administration responded by letter dated July 1, 2016, granting plaintiff thirty days within which to file a civil complaint. (AR 1).

On July 27, 2016, plaintiff filed a complaint seeking judicial review pursuant to 42 U.S.C. § 405(g). (Docket no. 1). Pursuant to the court's January 11, 2017 Order (Docket no. 17), this case is now before the undersigned for a report and recommendation on the parties' cross-motions for summary judgment. (Docket nos. 9, 14).

## II. STANDARD OF REVIEW

Under the Social Security Act, the court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standards were applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hays*, 907 F.2d at 1456 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While the

standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

In determining whether the Commissioner's decision is supported by substantial evidence, the court must examine the record as a whole, but may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *See Perales*, 402 U.S. at 390. Moreover, the Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *See Hays*, 907 F.2d at 1456–57. Overall, if the Commissioner's resolution of conflicts in the evidence is supported by substantial evidence, the district court must affirm the decision. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

### III. FACTUAL BACKGROUND

#### A.   Plaintiff's Age, Education, and Employment History

Plaintiff was born in 1962 (AR 103–04) and he was fifty-one at the time of the ALJ's second decision (AR 76). Plaintiff did not complete his high school education,[3] and he began working as a bricklayer for his father's company the summer after he completed the ninth grade. (AR 114). Plaintiff worked as a bricklayer for his father's company until his back pain precluded him from doing so. (AR 51–52). Plaintiff then continued to work for his father's company as a runner, and he would drive and deliver materials and payroll documents to job

---

[3] At plaintiff's first hearing before the ALJ, he testified that he has a ninth grade education. (AR 104). However, at the second ALJ hearing, plaintiff testified he has a tenth grade education. (AR 50).

4

sites. (AR 50–51). Plaintiff has not been employed since his father's company closed. (AR 131–33).

### B. Plaintiff's Medical History

While the undersigned would normally provide a summary of the 450 pages of plaintiff's medical records contained in the Administrative Record in this report and recommendation, an analysis of those records is not needed in this case. For the purposes of this motion, plaintiff is not contesting the factual findings of the ALJ or the ALJ's residual functional capacity determination. (Docket no. 10 at 8–9). Since plaintiff's medical condition and limitations are not disputed, a summary of plaintiff's voluminous medical records is not necessary.

### C. The ALJ's Second Decision on February 12, 2014

Determining whether an individual is eligible for disability insurance benefits requires the ALJ to employ a five-step sequential evaluation. Specifically, the Commissioner must consider whether a claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment and is thus considered *per se* disabling; (4) can return to past relevant work; and (5) if unable to return to past relevant work, whether claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. It is this five-step analysis that the court must examine to determine whether the correct legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence. *See* 20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ made the following findings: (1) plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014; (2) plaintiff has not engaged in substantial gainful activity since December 31, 2008, the alleged onset date; (3) plaintiff has the following severe impairments: bilateral carpal tunnel syndrome, degenerative

disc disease of the cervical, thoracic, and lumbar spine, uveitic glaucoma of the left eye, pseudophakia of the left eye, sciatica, spondylosis of the lumbar spine, and ocular herpes simplex virus infection; (4) plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1; (5) plaintiff has the residual function capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except plaintiff is limited to such work in several respects;[4] (6) plaintiff is unable to perform any past relevant work; (7) plaintiff was born in 1962, and was 46 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date but subsequently changed age category to closely approaching advanced age; (8) plaintiff has limited education and is able to communicate in English; (9) transferability of job skills is not material to the disability determination in this case; (10) considering plaintiff's age, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform; and (11) plaintiff has not been under a disability, as defined in the Social Security Act, from December 31, 2008 through the date of the ALJ's second decision. (AR 24–33).

## IV. ANALYSIS

### A.    Overview

On July 27, 2016, plaintiff filed his complaint seeking review pursuant to 42 U.S.C. § 405(g). (Docket no. 1). As set forth in his memorandum in support of his motion for summary judgment, plaintiff does not contest any of the ALJ's factual findings in this action, including the ALJ's determination of the plaintiff's residual functional capacity. (Docket no. 10 at 8). Instead,

---

[4] The ALJ concluded that plaintiff is limited to work requiring only occasional carrying, lifting, pushing, and pulling of twenty pounds and frequent carrying, lifting, pushing, or pulling of ten pounds. (AR 26). Plaintiff is further limited to only occasional use of his dominant arm for reaching in all directions, and only occasional fingering, feeling, and handling with his dominant hand. (*Id.*). Lastly, the ALJ concluded that plaintiff cannot work in occupations that require bilateral vision, full field of vision, or depth perception to perform his job duties. (*Id.*).

6

plaintiff claims that the ALJ erred in finding that a significant number of jobs exist in the national economy that plaintiff can perform as of his fiftieth birthday. (Docket no. 10).

### B. The ALJ's Determination that a Significant Number of Jobs Exist in the National Economy that Plaintiff Can Perform is Proper

Plaintiff's only challenge to the ALJ's determination is that the ALJ erred in concluding that a significant number of jobs exist in the national economy that the plaintiff can perform as of his fiftieth birthday.[5] The regulations provide that "work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. § 404.1566(a). The regulations further specify that work is determined to exist in the national economy "when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). If work that a claimant can perform exists in the national economy, that claimant will not be considered disabled. *Id.*

As a general matter, a claimant bears the burden of proving a disability within the definition of the Act. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). Once a claimant makes a prima facie showing of a disability that prevents him from engaging in his prior work activity, the burden shifts to the Secretary, who must show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy. *Id.* To aid the Secretary in making this determination, the regulations provide Medical-Vocational Guidelines, which contain three tables or "grids" that take administrative notice of the numbers of jobs existing in the national economy for persons by considering an individual's age, education, previous work experience, and residual functional capacity. *Grant*, 699 F.2d at 191–92.; 20 C.F.R. § 404, Subpt. P, App. 2. Table No. 1 concerns claimants with a

---

[5] Plaintiff concedes that the ALJ's decision that plaintiff was not disabled from his alleged disability onset date of December 31, 2008 until his fiftieth birthday in 2012 is proper. (Docket no. 10 at 1).

7

residual functional capacity limited to sedentary work as a result of severe medically determinable impairment(s), Table No. 2 concerns claimants with a residual functional capacity limited to light work, and Table No. 3 concerns claimants with a residual functional capacity limited to medium work. 20 C.F.R. § 404, Subpt. P, App. 2. Each table contains columns for various age categories, educational abilities, and previous work experience. *Id.* For the various permutations of these factors, the tables or grids dictate a finding of either "disabled" or "not disabled" and each such finding is given a "Rule" designation. *Id.* For example, in this case the ALJ found the plaintiff's residual functional capacity to be limited to light work and therefore Table No. 2 would apply. (AR 26). The ALJ also found that, at the time of the second hearing, the appropriate age category for the plaintiff was "closely approaching advanced age" since he was between 50 and 54 years of age. (AR 32). The ALJ determined that while plaintiff had a limited education level, he was able to communicate in English and that any job skills that plaintiff may have acquired were not material to the disability determination. (AR 32). If only those factors were considered, Rule 202.11 in Table No. 2 would dictate a finding of not disabled. (AR 33).

The grids, however, consider only the exertional, or physical strength, components of a claimant's disability. *Grant*, 699 F.2d at 192. As such, the regulations explain that when an individual suffers from both exertional and nonexertional impairments, the rules contained in the grids are not conclusive and individualized consideration must be given to that case. *Id.*; 20 C.F.R. § 404, Subpt. P, App. 2. This court has recognized that "if a claimant's nonexertional impairments limit the range of jobs available to a person with the claimant's exertional capabilities, then the Commissioner 'must produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs which exist in the national

economy.'" *Simpson v. Colvin*, No. 3:13-CV-250, 2014 WL 806121, at *2 (E.D. Va. Feb. 28, 2014) (quoting *Grant*, 699 F.2d at 192).

Plaintiff argues that the ALJ failed to apply the "framework" analysis that is endorsed by Social Security Rulings 83-12 and 83-14. (Docket no. 10 at 5). Social Security Ruling 83-14 explains that when a claimant has both exertional and nonexertional limitations, the rules contained in the tables or grids do not apply to direct a conclusion of disabled or not disabled but they should be used, in conjunction with the definitions and discussions provided in the text of the regulations, as a framework for decisionmaking. SSR 83-14, 1983 WL 31254, at *1 (Jan. 1, 1983). In cases where a claimant has significant nonexertional limitations, the rules should be used as "the starting point to evaluate what the person can still do functionally. The rules will also be used to determine how the totality of limitations or restrictions reduces the occupational base of administratively noticed unskilled sedentary, light, or medium jobs." *Id.* at *3. Ruling 83-14 recognizes that an additional exertional or nonexertional limitation may substantially reduce a range of work to the extent that an individual is very close to meeting a table rule which directs a conclusion of disabled. *Id.* Ruling 83-14 further explains that use of a vocational resource or expert may be helpful in determining the extent to which nonexertional limitations reduce the range of work an individual can perform. *Id.* at *4. Ruling 83-14 concludes by explaining that when determining the effect of nonexertional limitations on an individual's exertional job base, the decisionmaker has the following three possibilities to consider:

> 1. Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected.

> 2. Where it is clear that additional limitations or restrictions have significantly eroded the exertional job base set by the exertional limitations alone, the remaining portion of the job base will guide the decision.

> 3. Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a [vocational specialist] will be necessary.

*Id.* at *6.

Plaintiff correctly states that once an "occupational base" is determined, the ALJ must further assess how the individual's occupational base is reduced by any additional nonexertional limitations. (Docket no. 10 at 5–6). Plaintiff then argues, without any supporting citation to legal authority, that if the nonexertional limitations reduce the claimant's occupational base to an occupational base number that more closely approximates that of another rule, that rule becomes the "framework" for the decision regardless of the exertional level determined by the ALJ. (Docket no. 10 at 6). Plaintiff claims that this "framework" analysis would then require a finding under the "more closely approximating rule" referring to the language in Social Security Ruling 83-12 (relating to claimants with only exertional limitations) that "if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.'" SSR 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983).

However, the Fourth Circuit has concluded that the rulings contained in the grids are not conclusive when a claimant has both exertional and nonexertional limitations and instead requires the testimony of a vocational expert to determine whether the claimant has the ability to perform specific jobs that exist in the national economy. *Grant*, 699 F.2d at 191–92. Similarly, Social Security Ruling 83-14 also explains that the use of a vocational resource or vocational expert may be helpful in determining whether an individual is disabled. SSR 83-14, 1983 WL 31254, at *4 (Jan. 1, 1983).

In this case, plaintiff suffers from both exertional and nonexertional limitations. The ALJ properly called a vocational expert to testify as to whether there were a significant number of jobs in the national economy that plaintiff could perform. At the hearing, the ALJ asked the vocational expert to testify as to a hypothetical individual of the same age, education, and work experience as the plaintiff, with the same exertional and nonexertional limitations of the plaintiff. (AR 76). In response, the vocational expert testified that there are "[v]ery few" occupations such an individual could perform, and specifically identified only one such occupation, a counter clerk. (AR 77). Regarding job opportunities as a counter clerk, the vocational expert testified that there are 95,000 nationally and 1,400 regionally in the greater D.C. metro area. (*Id.*). With this information, the ALJ confirmed that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles and concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate[.]" (AR 33).

Plaintiff argues that the ALJ erred as a matter of law by failing to consider how his nonexertional limitations eroded the light work occupational base along with his transition to the "closely approaching advanced age" category when he turned fifty years old. The undersigned recommends that the District Judge find the plaintiff's arguments to be unpersuasive. Regarding plaintiff's argument that the ALJ failed to fully consider the additional limitations of his nonexertional impairments, at the hearing on February 12, 2014, the ALJ asked the vocational expert the following question:

> If I have a hypothetical individual the same age, education, and work experience as the claimant...My hypothetical [individual] can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds; stand and/or walk for a total of six hours in an eight-hour work day; push and/or pull as much as they can lift

> and/or carry. My hypothetical individual would need to be in an occupation in which he would not need bilateral vision, depth perception, or a full field of vision. My hypothetical individual can only occasionally use his dominant hand and only occasionally use the dominant arm—and that means, in this case, only occasional—with regard to the hand—only occasional feeling, handling, and fingering with the dominant hand. And let me make that even more clear, with regard to that arm. That dominant arm can only [occasionally be used] for reaching in any direction...Are there any unskilled occupations my hypothetical individual can perform?

(AR 76–77). In response to this hypothetical, the vocational expert provided that the only specific occupation she was able to identify at that time that fit those limitations was a counter clerk and explained that "[e]verything else requires either frequent or constant use of the hands or may require some better vision than what the limitations are at." (AR 77).

The vocational expert's testimony clearly indicates that she considered plaintiff's significant nonexertional limitations in concluding that plaintiff could perform only one of the 1,400 occupations that are recognized as light duty occupations by the Secretary.[6] The ALJ's questioning of the vocational expert (AR 76–79) and his decision (AR 33) also reveal that he fully understood that the light duty occupational base was significantly eroded as a result of the additional limitations he made in determining plaintiff's residual functional capacity. Even though the light duty occupational base had been eroded to possibly only one occupation (counter clerk), the ALJ found, based on the testimony of vocational expert, that given plaintiff's age, education, work experience, and residual functional capacity, the plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (AR 33). The ALJ made an individualized consideration of how the nonexertional limitations narrowed the range of jobs available to the plaintiff and, with the assistance of

---

[6] While there was an issue of whether other light duty occupations were available, the ALJ specifically found that was immaterial since a not disabled finding is appropriate even if there is only a single occupation with a significant number of jobs in the national economy that the plaintiff can perform. (AR 33).

12

testimony from a vocational expert, he determined that the plaintiff was capable of performing the duties of a counter clerk. (*Id.*).

The undersigned also recommends that the District Judge find plaintiff's argument that the ALJ failed to consider how his age impacted his ability to perform work that exists in the national economy unpersuasive. The ALJ found plaintiff to have the residual functional capacity to perform light work that was further limited by plaintiff's previously explained exertional and nonexertional impairments. (AR 26). The ALJ also found that plaintiff was born in 1962, so his age was 50 years old as of 2012 and his age category became "closely approaching advanced age." (AR 32). The ALJ then found that using the grids, Rule 202.11 (which applies to a claimant in the "closely approaching advanced age" category) would dictate a finding that plaintiff was not disabled if the plaintiff had the residual functional capacity to perform the full range of light duty work. (AR 33). This represents a proper initial analysis for the plaintiff using the grids. 20 C.F.R. § 404, Subpt. P, App. 2. However, the ALJ correctly recognized that plaintiff suffers from additional limitations, and did not rely solely on the grid rules for making plaintiff's disability determination. (AR 32–33). Instead, the ALJ asked the vocational expert to consider all of plaintiff's conditions and limitations and to opine as to whether jobs exist in significant numbers in the national economy that plaintiff could perform given his age, education, and work experience. (AR 33). In response to this specific question the vocational expert testified that plaintiff could work as a counter clerk, and that 1,400 such jobs exist in the local economy. (AR 76–77). Using this information, the ALJ then concluded that plaintiff was not disabled. (AR 33).

Plaintiff does not contest that 1,400 potential counter clerk jobs constitutes a significant number of jobs nor does he dispute that there are 1,400 such positions in his local area. (Docket

13

no. 18 at 1).[7] Plaintiff's argument is only that the ALJ applied the incorrect standard in evaluating whether a significant number of jobs exist in the local economy that he can perform.

Plaintiff's argument that when nonexertional limitations reduce an occupational base to a point that it more closely approximates another rule, that the "more closely approximating" rule should dictate a finding is misplaced. First, when nonexertional limitations significantly erode an occupational base, the tables or grids do not dictate a result. While the tables or grids may be used a "framework" for further analysis, it is clear from the regulations and the authorities cited above, the ALJ may not make a determination based solely on the tables or the grids and the ALJ must make an individualized determination using the assistance of a vocational expert. Nothing in the regulations or the Social Security Rulings cited by the plaintiff requires what plaintiff argues for in this motion. Social Security Ruling 83-12 indicates only that if a claimant's exertional capacity is significantly reduced than it "could" indicate little more than the occupational base for the lower rule and "could" justify a finding of disabled. SSR 83-12, 1983 WL 31253, at *2. Nothing in Social Security Rule 83-12 provides that an individualized consideration is not required under those circumstances and that a rule in the tables or grids either must or shall control the determination. Social Security Ruling 83-14 provides that in cases like the plaintiff's, the rules are the "starting point" and provide a "framework" for evaluating additional impairments of a nonexertional nature. SSR 83-14, 1983 WL 31254, at *3. Social Security Ruling 83-14 requires exactly what the ALJ did in this case, obtain the assistance of a vocational expert in making an individualized determination given the plaintiff's age, education, work experience, and residual functional capacity.

---

[7] As set forth in the Commissioner's memorandum in support of her motion for summary judgment, extensive authority exists stating that even one occupation that has sufficient numbers of jobs available in the national economy can support a finding of not disabled and that 1,400 jobs in the local area is a sufficient number. (Docket no. 15 at 3, 10–11).

In this case the ALJ made an individualized assessment and based his decision on the plaintiff's age, education, work experience, residual functional capacity, and the vocational expert's testimony as to the existence of jobs in the national economy that plaintiff can perform. Therefore the undersigned recommends the District Judge find that ALJ applied the appropriate legal standards and analysis and that his decision is supported by substantial evidence.

## V. CONCLUSION

Based on the foregoing, it is recommended that the court find that the Commissioner's final decision rendered on April 16, 2015, denying benefits for the period December 31, 2008 through the date of the decision, is supported by substantial evidence and that the proper legal standards were applied in evaluating that evidence. Accordingly, the undersigned recommends that plaintiff's motion for summary judgment (Docket no. 9) be denied; the Commissioner's motion for summary judgment (Docket no. 14) be granted; and the final decision of the Commissioner be affirmed.

## NOTICE

Failure to file written objections to this report and recommendation within 14 days after being served with a copy of this report and recommendation may result in the waiver of any right to a *de novo* review of this report and recommendation and such failure shall bar you from attacking on appeal any finding or conclusion accepted and adopted by the District Judge except upon grounds of plain error.

Entered this 3rd day of February, 2017.

/s/
John F. Anderson
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia